IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| V. | NO.6:21-CR-00151-TDD |
| BILLY JAMES MENEES (1)<br>ASHLEY DAWN MARIE SHARDEIN (2) | |

### DEFENDANT MENEES'S SECOND MOTION AND BRIEF TO DISMISS THE INDICTMENTS

TO THE HONORABLE TIMOTHY D. DEGIUSTI,
UNITED STATES DISTRICT JUDGE:

COMES NOW, Defendant, Billy James Menees ("Mr. Menees"), by and through his attorney of record, Cody L. Cofer ("Counsel"), and hereby moves the Court to dismiss the superseding indictment against Mr. Menees. First, the Court should dismiss the superseding indictment because the Oklahoma statutes of prosecution are unconstitutional on their face and as applied. Additionally, the Court should dismiss the superseding indictment because it improperly charges Oklahoma state law when Choctaw tribal law is the proper choice of law under the Assimilated Crimes Act. This motion references the superseding indictment (ECF 98) but intends to also advance these complaints and arguments in reference to both the initial indictment (ECF 23) and the superseding indictment (ECF 98).

**Statement of Objection:** The Government opposes this motion.

In support of his motion, Mr. Menees would show:

## I. Background

On January 25, 2022, a federal grand jury returned a superseding indictment charging Mr. Menees and co-defendant Ashley Schardein with two charges: (1) *Child Abuse in Indian Country*, in violation of 18 U.S.C. §§ 1151, 1152 2, and 21 O.S. § 843.5(A)(1); and (2) *Child Neglect in Indian Country* in violation of 18 U.S.C. §§ 1151, 1152 2, and 21 O.S. § 843.5(C). (ECF 98).

Count One incorporates the Oklahoma state statute Title 21, Oklahoma Statutes, Section 843.5(A). (ECF 98). The Oklahoma statute criminalizes "child abuse." 21 O.S. § 843.5(A) (OSCN 2021). The statute defines "child abuse" as:

> A. the willful or malicious harm or threatened harm or failure to protect from harm or threatened harm to the health, safety or welfare of a child under eighteen (18) years of age by a person responsible for a child's health, safety or welfare, or
>
> B. the act of willfully or maliciously injuring, torturing or maiming a child under eighteen (18) years of age by any person.

21 O.S. § 843.5(O)(1). Count One incorporates the Section (O)(1)(a) definition of "child abuse." (ECF 98). In Count One, the superseding indictment charges Mr. Menees with causing harm, threatening harm, failing to protect from harm, and failing to protect from threats of harm. (ECF 98).

Count Two incorporates the Oklahoma statute Title 21, Oklahoma Statutes, Section 843.5(C). (ECF 98). The Oklahoma statute criminalizes "child neglect." 21 O.S. § 843.5(C). In relevant part, the statute defines "child neglect" as the failure or omission to provide:

A. adequate nurturance and affection, food, clothing, shelter, sanitation, hygiene;

B. medical care; and

C. supervision.

10A O.S. § 1-1-105(49)(a). The statute excludes from the definition of "neglect" allowing a child to engage in independent activities such as traveling to and from school, playing outdoors, and remaining home unattended. 10A O.S. § 1-1-105(49)(b). However, the exclusion has a limitation mirroring the language found in the "child abuse" definition. Specifically, the exclusion does not apply "if the person responsible for the child's health, safety or welfare willfully disregards any harm or threatened harm to the child, given the child's level of maturity, physical condition or mental abilities." 10A O.S. § 1-1-105(49).

## II. The Oklahoma Statutes of Prosecution Are Unconstitutionally Vague Both Facially and as Applied.

### A. The Statutes are Unconstitutionally Vague on Their Face.

The Fifth Amendment says, "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357–

358 (1983). The statutes under which the Government is prosecuting Mr. Menees do not exclude constitutionally protected acts.

A facial challenge to a statute is one that challenges the text of a statute itself, rather than its hypothetical or actual application to a set of facts. *Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012). Facial challenges are permitted when statutes are overly broad and may resultantly have a chilling effect on activities not before the court. *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 129 (1992). Additionally, under the Tenth Circuit's jurisprudence, a facial challenge may only be made "if it threatens First Amendment interests or if the challenge is made before enforcement." *United States v. Rodebaugh*, 798, F.3d 1281, 1294 (10th Cir. 2015).

> **1. The Oklahoma Statutes Burden the First and Fourteenth Amendment Rights of Familial Association.**

Individuals are guaranteed the fundamental right of familial association, or intimate association. U.S. Const. amend. I; *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18, 619-20 (1984). The Supreme Court recognized this right's importance for individual freedom in *Roberts v. United States Jaycees*. "[T]he Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Id.* at 617-18. The court goes on to explain the significance of intimate association in the context of the family:

> The personal affiliations that exemplify these considerations, and that therefore suggest some relevant limitations on the relationships that might be entitled to this sort of constitutional protection, are those that attend the creation and sustenance of a family—marriage, childbirth, the raising and

> education of children, and cohabitation with one's relatives. Family relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life. Among other things, therefore, they are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship. As a general matter, only relationships with these sorts of qualities are likely to reflect the considerations that have led to an understanding of freedom of association as an intrinsic element of personal liberty.

*Id.* at 619-20 (cleaned up).

However, there has been disagreement among the circuits on whether the recognized right of intimate association is protected by the First Amendment or the Fourteenth Amendment. *Griffin v. Strong*, 983 F.2d 1544, 1546-47 (10th Cir. 1993) ("We believe the familial right of association is properly based on the concept of liberty in the Fourteenth Amendment."); *Mayo v. Lane*, 867 F.2d 374, 375 (7th Cir. 1989) ("The concept of liberty in the Fourteenth Amendment has been held to embrace a right to associate with one's relatives."); *Trujillo v. Bd. of County Comm'rs of Santa Fe County*, 768 F.2d 1186, 1190 n.7 (10th Cir. 1985) ("[T]he freedom of intimate association draws support from the First Amendment values of self-expression and identification."); *Mann v. City of Sacramento*, 748 F. App'x 112, 115 (9th Cir. 2018) ("[R]elationships involving marriage, child-rearing, or cohabitation are protected by the First Amendment."). The Supreme Court itself has emphasized that the First Amendment protects family relationships. *Bd. of Dirs. of Rotary Intern v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987) ("We have emphasized that the First Amendment protects those relationships, including family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals

with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'") (quoting *Roberts*, 468 U.S. at 619-20). Accordingly, there is genuine support for the right of familial association under the First Amendment, as individuals have a right to freedom of association built into the text of the Constitution. U.S. Const. amend. I; *Trujillo*, 768 F.2d at 1188, 1190 n.7.

The First Amendment provides protection for the family. But also the Fourteenth Amendment provides the right of the individual to "establish a home and bring up children." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). The prosecution of Mr. Menees offends both the First and Fourteenth Amendment rights to familial association and to parent one's children.

### 2. The Oklahoma Statutes Do Not Pass Strict Scrutiny Because They Are Not Narrowly Tailored and Are Overly Broad.

While statutes are typically presumed to be constitutional, that presumption does not apply when the law burdens First Amendment rights. *Doe*, 667 F.3d at 1120. "[T]hough duly enacted laws are ordinarily presumed constitutional, when a law infringes on the exercise of First Amendment rights, its proponent bears the burden of establishing its constitutionality." *ACORN v. Municipality of Golden, Colo.*, 744 F.2d 739, 746 (10th Cir. 1984).

Additionally, while the right to intimate association is not absolutely protected from state regulation, state regulations of intimate or familial association are subject to strict scrutiny. *See La. Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1498 (5th Cir. 1995). "Strict scrutiny analysis requires the government to demonstrate that (1)

the state action serves a compelling state interest which (2) cannot be achieved through means significantly less restrictive of one's associational freedom." *Id.*

Mr. Menees does not contest the first prong of the strict scrutiny analysis: the requirement of a compelling government interest. *See id.* Specifically, Mr. Menees recognizes that preventing or stopping child abuse is a compelling government interest. *See Griffin*, 983 F.2d at 1548. However, the statutes at issue fail the narrow tailoring requirement. The Oklahoma statutes are overly broad and vague, encompassing behavior that is not child abuse and placing an extraordinary burden on constitutionally protected rights.

For Count One, Mr. Menees is charged with *Child Abuse in Indian Country*, in violation of 21 O.S. § 843.5(A)(1). The Oklahoma statute defines "child abuse" as:

> A. the willful or malicious harm or threatened harm or failure to protect from harm or threatened harm to the health, safety or welfare of a child under eighteen (18) years of age by a person responsible for a child's health, safety or welfare, or
>
> B. the act of willfully or maliciously injuring, torturing or maiming a child under eighteen (18) years of age by any person.

21 O.S. § 843.5(O)(1). The term "harm" is not defined by Oklahoma statute. Oklahoma law does provide an exception for "ordinary force" used as a means of discipline (e.g., spanking, switching, or paddling). 21 O.S. § 844.

Count Two incorporates the Oklahoma statute Title 21, Oklahoma Statutes, Section 843.5(C). (ECF 98). The Oklahoma statute criminalizes "child neglect." 21 O.S. § 843.5(C). In relevant part, the statute defines "child neglect" as the failure or omission to provide:

    A. adequate nurturance and affection, food, clothing, shelter, sanitation, hygiene;
    B. medical care; and
    C. supervision.

10A O.S. § 1-1-105(49)(a). The term "harm" and the phrase "adequate nurturance and affection" are too vague to pass constitutional muster. The constitutionally deficient statutes fail facially because they are not narrowly tailored and encompass more behavior than required to prevent the harm the statute seeks to protect. Prosecution based on these terms violates Mr. Menees's rights to due process, equal protection, a fair trial, indictment by a grand jury, and to familial association. U.S. Const. amend. I, V, VI, & XIV.

First, the language does not provide adequate notice to the accused. The expansive variety of conduct possibly encompassed by these terms makes preparing to meet the charges impossible. The language is nebulous and intertwined with norms that vary drastically across geographic and socio-economic strata. Harm may be evaluated by a variety of corporeal discomforts: physical, mental, or emotional. Those same discomforts viewed as present "harm" may accrue as a benefit to a child's wellbeing—physically, mentally, or emotionally. Further, harm extends into the realm beyond the body and mind (i.e., economic harm, harm to one's status or reputation). The surrounding statutory language adds to the opacity of "harm" and the phrase "adequate nurturance and affection."

Second, the language does not exclude constitutionally protected acts. A person has the right to marry, procreate, and direct the upbringing of their children. Notwithstanding whether any allegations against Mr. Menees go beyond these rights, the statutes under which he is charged do not distinguish between conduct that is criminal and conduct that is constitutionally protected. The vagueness of the statute causes a chilling effect on those parenting children. Even more so than the right to speech, the right to parent one's children is fleeting. Those who refrain from parenting how they deem appropriate will never have a chance to make their claims in court. These rights are particularly vulnerable in the context of Indian Country federal prosecutions.

Finally, the vagueness of the statute undermines the accused's right to a fair trial and indictment by a grand jury. One cannot have a fair trial if the Government is allowed to present a limitless variety of conduct any of which may be offensive to jurors but not truly criminal. The same issue taints the grand jury process. One cannot know if the grand jury indicted on criminal parenting choices or simply those that the grand jurors disagree with. These rights are intertwined with the notice deficiency and encroachment upon constitutionally protected conduct.

These concerns and ill effects of the statutes result in a chilling effect on constitutionally protected behavior, and arbitrary enforcement of the overly broad statute burdens Mr. Menees's First or Fourteenth Amendment right to familial association and child rearing. Due to the lack of narrow tailoring in the statutes, the statutes of prosecution are facially vague and unconstitutional.

### B. The Statutes of Prosecution Are Unconstitutionally Vague as Applied.

In the event that the Court holds that the statute is facially valid, Mr. Menees also asserts that the statute is unconstitutional as applied to the facts of this case. A defendant may challenge the constitutionality of a statute by asserting a challenge to the facial validity, a challenge to the statute as applied, or both. *United States v. Carel*, 668 F.3d 1211, 1217 (10th Cir. 2011). In contrast to a facial challenge, an as-applied challenge contends that the application of the statute is not constitutional in this particular case. *Id.*

A statute can be impermissibly vague in application if it (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Rodebaugh*, 798 F.3d at 1295. Additionally, an as-applied challenge "fails when a defendant has knowledge of the illegality of his activities." *Id.*

As explained above, the term "harm" and the phrase "adequate nurturance and affection" are too vague and are not defined with specificity by Oklahoma Statute. As a father, Mr. Menees has a right to parent his children and have a clear understanding of what conduct is prohibited. The nebulous terms of the statute do not clearly delineate what actions are permissible or not. Considering that the statute does not define what constitutes harm and that the indictment does not specify the alleged harm, it cannot be presumed that Mr. Menees has notice of what conduct he is being prosecuted. Finally, foreclosing an as-applied challenge from a defendant who "has knowledge" of the illegality of his activities unfairly presumes that Mr. Menees's unspecified conduct was illegal and that he in fact had knowledge of this alleged illegality.

## C. Remedy

Mr. Menees asks the Court to dismiss the superseding indictment because the statutes of prosecution are facially unconstitutional due to their vagueness and overbroad effects. Alternatively, Mr. Menees asks the Court to dismiss the superseding indictment because the statute is vague as applied to Mr. Menees's case.

If the Court declines to dismiss the indictment, Mr. Menees renews his request for the Court to order the Government to present the case to a grand jury anew to return an indictment that narrows the conduct relied upon for a true bill and exclude constitutionally protected conduct. An indictment with more specificity regarding the alleged conduct would help ameliorate the prejudice caused by overbroad enforcement and lack of notice.

As a second alternative, Mr. Menees points out to the Court that the remedy of a bill of particulars, pursuant to Federal Rule of Criminal Procedure 7(f), is now timely. As the Court indicated in its order, a defendant's request for a bill of particulars requires permission from the Court if the motion is made more than 14 days after arraignment. Fed. R. Crim. P. 7(f). However, because the grand jury handed down a superseding indictment, Mr. Menees was re-arraigned on February 1, 2022. (ECF 109). Accordingly, the request for a bill of particulars is now timely.

"The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense." *United States v. Levine*, 983 F.2d 165, 166-67 (10th Cir. 1992). A bill of particulars is unnecessary if "the indictment sets forth the elements of the offense charged and sufficiently apprised the defendant of the charges to enable him to prepare for trial." *Id.* at 167.

While the superseding indictment sets forth the elements of the charges, it does not adequately provide the factual allegations against Mr. Menees. A federal indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . ." Fed. R. Crim. P. 7(c)(1). The superseding indictment, in this case, presents no specific factual allegations besides the alleged time period and status of the parties as Indian or non-Indian. (ECF 98). The Government's assertion that Mr. Menees has notice of the facts because he has received discovery on the case does not satisfy the requirements of an indictment, as outlined by the Federal Rules of Criminal Procedure. (ECF 58). *See* Fed. R. Crim. P. 7(c)(1). Accordingly, a bill of particulars is appropriate in this case in order to properly apprise Mr. Menees of the relevant facts.

**II.   The Superseding Indictment Improperly Charges Oklahoma State Law When Choctaw Tribal Law is the Proper Choice of Law.**

   **A.   Arguments and Authorities**

The Indian General Crimes Act provides that the "general laws of the United States" extend to Indian country. 18 U.S.C. § 1152(a). This typically means that the defendant in a criminal case occurring in Indian Country may be charged with a federal crime. *United States v. Langford*, 641 F.3d 1195, 1197 (10th Cir. 2011).

Additionally, through the Assimilative Crimes Act ("ACA"), it is well established that the federal government may charge the crimes of a "State, Territory, Possession, or District" in federal enclaves as a gap-filling device when there is no applicable federal statute. 18 U.S.C. § 13(a). For example, when the federal government charges a crime through the ACA in a territory like Guam, the adopted statute is from Guam criminal law.

*See United States v. Lopez*, 4 F.4th 706, 725 (9th Cir. 2021). It is clear that this applies to Indian Reservations, as Indian territory is considered a federal enclave. *Williams v. United States*, 327 U.S. 711, 713-14 (1946).

> The text of the Assimilated Crime Act provides:
>
> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, or on, above, or below any portion of the territorial sea of the United States not within the jurisdiction of any State, Commonwealth, territory, possession, or district is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a). As the text of the statute clearly states, the Government may adopt the laws of the *territory* in which the federal enclave is situated. *Id.* Further, the Supreme Court has consistently held that federal statutes and regulations relating to tribes and tribal activities must be "construed generously in order to comport with . . . traditional notions of [Indian] sovereignty and with the federal policy of encouraging tribal independence." *Ramah Navajo Sch. Bd. v. Bureau of Revenue*, 458 U.S. 832, 846 (1982). It follows then that the proper criminal charge, in this case, is one that incorporates the relevant tribal law, as the superseding indictment alleges that the offenses occurred in Indian Country. (ECF 98).

Through the ACA, the federal government may charge a "like offense" and impose a "like punishment." 18 U.S.C. § 13(a). Because the alleged offenses occurred in Choctaw

territory, the federal government should incorporate Choctaw law. *See id.* The Choctaw Criminal Code provides:

> Section 843.1. Child abuse—Child neglect—Child sexual abuse—Child sexual exploitation—Enabling—Penalties
>
> Any parent or other person who shall willfully or maliciously engage in child abuse, enabling child abuse, child neglect, enabling child neglect, child sexual abuse, enabling child sexual abuse, child sexual exploitation, or enabling child sexual exploitation shall, upon conviction, be guilty of a felony punishable by imprisonment not exceeding three (3) years imprisonment or by a fine of not less than Five Hundred Dollars ($500.00) nor more than Five Thousand Dollars ($5,000.00), or both such fine and imprisonment.

Choctaw Nation Crim. Code § 843.1. If Mr. Menees were properly charged under Choctaw Law, he would face a maximum of 3 years imprisonment. *See id.*

### B. Remedy

Because the indictments allege acts or omission to have occurred in Choctaw Nation, the ACA does not authorize the incorporation of Oklahoma state law. Thus, the Court should dismiss the indictment.

### III. Prayer

WHEREFORE PREMISES CONSIDERED, Mr. Menees prays that in the above referenced and entitled cause, the Court dismiss the indictment against Mr. Menees, and grant Mr. Menees other such relief to which he may be entitled.

Respectfully submitted by,
*/s/Cody L. Cofer*
Cody L. Cofer
COFER LUSTER LAW FIRM, PC
TX SBN: 24066643
300 Burnett Street, Suite 130
Fort Worth, Texas 76102
Phone: 682-777-3336
Fax: 682-238-5577
Email: ccofer@coferluster.com
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2022, I electronically filed the foregoing document with the clerk for the U.S. District Court, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys for the parties.

*/s/Cody L. Cofer*
Cody L. Cofer

## CERTIFICATE OF CONFERENCE

I hereby certify that on February 10, 2022, I conferred with the attorney for the Government. The Government opposes this motion.

*/s/Cody L. Cofer*
Cody L. Cofer