IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,            )<br>                                                                )<br>            Plaintiff,                              )<br>                                                                )<br>vs.                                                         )          Case No. CR-21-151-TDD<br>                                                                )<br>                                                                )<br>BILLY JAMES MENEES and             )<br>ASHLEY DAWN MARIE SCHARDEIN,  )<br>                                                                )<br>            Defendants.                         )| |

## **ORDER**

Before the Court is Defendant Billy Menees's Third Motion to Dismiss [Doc. No. 133-1]. Defendant Ashley Schardein has joined in the motion [Doc. No. 134], and the government has filed a response in opposition [Doc. No. 137]. The matter is fully briefed and at issue. Defendants argue that, based on the Supreme Court's recent decision in *Oklahoma v. Castro-Huerta*, 597 U.S. __ (2022), the Court no longer has jurisdiction in this case. The Court disagrees.

In the Superseding Indictment [Doc. No. 98], the government alleges that Defendants are non-Indians who committed violations of Oklahoma's child abuse and neglect statutes against an Indian in Indian Country. Defendants are thus charged under the General Crimes Act, 18 U.S.C. § 1152, which states in relevant part: "the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall

extend to the Indian country." The government charges the violations of state law through the Assimilative Crimes Act (ACA), 18 U.S.C. § 13.

The ACA "assimilates into federal law, and thereby makes applicable on federal enclaves such as Army bases, certain criminal laws of the State in which the enclave is located." *Lewis v. United States*, 523 U.S. 155, 158 (1998). Its purpose "is one of borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves." *Id.* at 160 (citing *Williams v. United States*, 327 U.S. 711, 718–19 (1946)). Based on Supreme Court precedent, the Court previously concluded that the ACA is applicable in this case. *See* Opinion [Doc. No. 120] at p.4 (citing *Williams*, 327 U.S. at 713). Defendants assert that conclusion was mistaken. Based entirely on *Castro-Huerta*, they argue the ACA is inapplicable in Indian Country.

Criminal jurisdiction in Indian Country changed drastically after the Supreme Court's decision in *McGirt v. Oklahoma*, 591 U.S. ___ (2020), and *Castro-Huerta* is the latest chapter in this saga. In *Castro-Huerta*, the Court held that "the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country." Slip. Op. at p. 25. To reach that holding, the Court determined that "the General Crimes Act does not treat Indian country as the equivalent of a federal enclave for jurisdictional purposes." *Id.* at p. 11. Defendants argue that based on this determination, the ACA does not apply in Indian Country and the Court does not have jurisdiction in this case. This argument faulters, however, under a closer and complete reading of *Castro-Huerta*.

Nothing in *Castro-Huerta* changes the way the ACA applies in Indian Country. The ACA applies in Indian Country as one of the "general laws of the United States" extended to Indian Country through the General Crimes Act. *Iowa Tribe of Indians of Kansas & Nebraska v. Kansas*, 787 F.2d 1434, 1437 (10th Cir. 1986) (citing *Williams*, 327 U.S. at 713–14); *Cheyenne-Arapaho Tribes of Oklahoma v. Oklahoma*, 618 F.2d 665, 668 (10th Cir. 1980). "In conjunction," the ACA and the General Crimes Act: "(1) assimilate state criminal law into federal law with respect to acts committed in territories of federal jurisdiction; and (2) apply these assimilated state crimes to acts committed in Indian country. *United States v. Langford*, 641 F.3d 1195, 1197 (10th Cir. 2011). That Indian Country is not the equivalent of a federal enclave does not mean the ACA is inapplicable in Indian Country.

Indeed, in *Castro-Huerta*, the Court explained that the General Crimes Act "borrows the body of federal criminal law that applies in federal enclaves and extends it to Indian country." 597 U.S. __, Slip. Op. at p.9. This means that the "federal criminal laws that apply to federal enclaves also apply in Indian country." *Id.* And the ACA clearly applies to federal enclaves. *United States v. Harris*, 10 F.4th 1005, 1010 (10th Cir. 2021). It thus applies in Indian Country, and it applies in this case.

## CONCLUSION

For these reasons, Defendant Billy Menees's Third Motion to Dismiss [Doc. No. 133-1] is **DENIED**.

**IT IS SO ORDERED** this 15th day of July, 2022.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE